IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Civil Action No. 12-cv-01270-DDD-SKC

VALERIE AREND,

    Plaintiff,

v.

HECTOR PAEZ, in his personal capacity,

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR ATTORNEYS' FEES**

---

This matter is before the Court on Plaintiff's Motion for Attorney Fees (Doc. 172), filed December 14, 2018.[1] On January 10, 2019, Defendant filed a response in opposition to the motion, and on January 31, 2019, Plaintiff filed her reply. For the reasons stated below, Plaintiff's motion is **GRANTED** in part and **DENIED** in part.

**I.    BACKGROUND**

This civil rights case arose out of a May 16, 2010, incident involving a former Denver Police Officer, Hector Paez, who kidnapped and sexually assaulted Plaintiff Valerie Arend ("Plaintiff"). Following lengthy and contentious criminal proceedings in the state court, Paez was ultimately convicted of sexual assault-in custody of law

---

[1] Upon the passing of Judge Wiley Y. Daniel, this matter was reassigned to the undersigned on May 21, 2019.

1

and second-degree kidnapping of Plaintiff. Paez appealed his conviction, which was affirmed by the Colorado Court of Appeals.

On May 14, 2012, Plaintiff initiated this lawsuit against Hector Paez ("Defendant") asserting a claim pursuant to 42 U.S.C. § 1983 for unlawful seizure, excessive force, and cruel and unusual punishment. On February 20, 2014, Judge Daniel denied without prejudice Plaintiff's initial motion for partial summary judgment on the issue of liability and administratively closed this case pending a resolution of the Defendant's appeal of his underlying state court criminal conviction. (Doc. 80.) On September 27, 2017, Plaintiff filed a motion to reopen this case, attaching both the Colorado Court of Appeals's December 31, 2015 opinion affirming the Denver District Court's judgment of conviction and the Colorado Supreme Court's denial of Defendant's Petition for Writ of Certiorari. On September 27, 2017, Judge Daniel granted Plaintiff's motion and reopened this case for good cause shown. After the case was reinstated, on October 26, 2017, Plaintiff filed a renewed motion for partial summary judgment on the issue of liability. On June 20, 2018, Judge Daniel issued a written order granting summary judgment in favor of Plaintiff and against the Defendant as to liability on her Section 1983 claim. (Doc. 104.) Thus, on October 29–30, 2018, Plaintiff's sole remaining claim for damages was tried to a jury. The jury awarded Plaintiff $167,250.00 in actual damages and $100,000.00 in punitive damages. On November 1, 2018, final judgment was entered for Plaintiff. (Doc. 164.)

## II. ATTORNEYS' FEES

Plaintiff seeks an award of attorneys' fees in the amount of $84,114.16, reflecting 358.4 hours expended by three attorneys at rates ranging from $225 to $250 per hour. Two of the attorneys also bill a total of 25.6 hours for travel time at $120 per hour plus mileage.

Title 42 U.S.C. § 1988 provides that in federal civil rights actions, including suits like the instant case brought under 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." To obtain attorney's fees under § 1988, "a claimant must prove two elements: (1) that the claimant was the prevailing party in the proceeding; and (2) that the claimant's fee request is reasonable." *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998) (internal quotations and citations omitted). "The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Case v. Unified Sch. Dist. No. 233, Johnson County, Kansas*, 157 F.3d 1243, 1249 (10th Cir. 1998) (internal citations omitted); *see also Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986) (internal citations omitted) (holding that it is "counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero").

### A. Prevailing Party

A plaintiff may be considered a prevailing party for attorneys' fees purposes if he or she "succeed[s] on any significant issue in litigation which achieves some of

3

the benefit the part[y] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (internal citations omitted). Here, the Court found liability in favor of the Plaintiff on her 42 U.S.C. § 1983 claim, and the jury awarded both actual damages and punitive damages, and Defendant does not contest Plaintiff's status as a prevailing party. The dispute is as to the reasonableness of the amount of requested fees.

**B. Reasonableness of the Fee Request**

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id.* In other words, "[t]o determine the reasonableness of a fee request, a court must begin by calculating the so-called lodestar amount of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a reasonable fee." *Robinson*, 160 F.3d at 1281 (internal quotations and citations omitted).

In determining the reasonableness of the hours expended, a court considers several factors, including: (1) whether the amount of time spent on a particular task appears reasonable in light of the complexity of the case, the strategies pursued, and the responses necessitated by an opponent's maneuvering; (2) whether the amount of time spent is reasonable in relation to counsel's experience; and (3) whether the billing entries are sufficiently detailed, showing how much time was

4

allotted to specific tasks. *See Ramos v. Lamm*, 713 F.2d 546, 553–54 (10th Cir. 1983).

"The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433. "Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case*, 157 F.3d at 1250.

Once the court has adequate time records before it, "it must then ensure that the winning attorneys have exercised 'billing judgment.'" *Case*, 157 F.3d at 1250 (quoting *Ramos*, 713 F.2d at 553). "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Id*. "Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable." *Id*. (citing *Ramos*, 713 F.2d at 553–54) (giving as an example time spent doing background research); *Hensley*, 461 U.S. at 434, 437 (expecting counsel to exercise their "billing judgment," "mak[ing] a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary").

In other words, the district court should exclude from this initial fee calculation hours that were not "reasonably expended." *Hensley*, 461 U.S. at 434 (internal quotation omitted). Factors that typically will be considered are

> (1) whether the tasks being billed would normally be billed to a paying client,
> (2) the number of hours spent on each task,
> (3) the complexity of the case,
> (4) the number of reasonable strategies pursued,
> (5) the responses necessitated by the maneuvering of the other side, and
> (6) potential duplication of services" by multiple lawyers.

*Robinson*, 160 F.3d at 1281 (internal quotations omitted). In sum, the Court must "ask what hours a reasonable attorney would have incurred and billed in the marketplace under similar circumstances." *Id*.

### 1. Reasonable Number of Hours

Based on a careful review of the billing records, it appears that attorney Alison Ruttenberg was the lead attorney in this case from its inception until early 2018, when she became ill. Ms. Ruttenberg drafted the majority of the pleadings, including the renewed motion for partial summary judgment on the issue of liability, which was ultimately granted by the Court. Ms. Ruttenberg submitted a billing statement for 127.5 hours of work on this case.

Attorney Lauren Maytin and Attorney Daniel Murphy represented Plaintiff during the 2-day damages trial before Judge Daniel along with post-trial matters. Additionally, both Ms. Maytin and Mr. Murphy bill for time spent representing Plaintiff on matters related to the Defendant's underlying criminal proceedings, which spanned approximately eight years. Ms. Maytin billed 152.60 hours for her

work on this case along with an additional 24 hours of travel time. Mr. Murphy billed 78.3[2] hours working on this case along with 1.6 hours travel time.

Defendant contends that the requested attorney hours should be reduced for excessive, vague, and unnecessary billing. D.C.COLO.LCivR 54.3(b)(2) requires the Plaintiff to include "a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed." *See Hensley*, 461 U.S. at 433 (stating that "the party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.").

The Court finds some merit in Defendant's challenges. Initially, the total amount of hours billed by Plaintiff's three attorneys appears to be excessive based on the nature of this case and its duration. While this case was stayed and administratively closed for a number of years during the pendency of the Defendant's criminal proceedings, the matter before this Court was relatively straightforward. Liability was resolved during the summary judgment stage after Defendant had already been convicted in state court, and the case proceeded to a two-day jury trial on damages.

The Court finds several of the entries appear to be unreasonable or duplicative. "The term duplicative in the context of attorney's fees requests usually refers to situations where more than the necessary number of lawyers are present

---

[2] In the initial motion, Mr. Murphy asserted that he worked a total of 76.8 hours, but in the reply brief, he added an additional 1.5 hours spent drafting the reply brief.

7

for a hearing or proceeding or when multiple lawyers do the same task. The more lawyers representing a side of the litigation, the greater the likelihood will be for duplication of services." *Robinson*, 160 F.3d at 1285 n.10 (internal citations and quotation marks omitted). Here, there are duplications with multiple co-counsel regarding the drafting of the complaint—a document which should not have taken a collective 7 hours to complete.[3] Ms. Ruttenberg also billed more than thirty-six hours to "review transcript of Defendant's criminal trial . . . and take notes relevant to the civil case." (Doc. 172, Ex. 1.) While the Court is hesitant to dissuade counsel from a thorough review of a related criminal trial, spending an additional 12 hours doing so only days after this case was administratively closed is not a reasonable endeavor at that time.

Furthermore, the billing statements are somewhat imprecise. (*Id.*) By way of example, on May 18, 2013, Ms. Ruttenberg, for a second straight day, billed 8 hours to "research offensive collateral estoppel, go through all the pertinent documents and draft declaration and draft motion for summary judgment on the issue of liability." (*Id.*) Defendant suggests this is evidence of block billing. The practice known as "block billing consists of attorneys recording large blocks of time for tasks without separating the tasks into individual blocks or elaborating on the amount of

---

[3] In addition to the 4 hours Ms. Ruttenberg spent reviewing documents and drafting the complaint, Ms. Maytin spent another 3 hours drafting it, and the resulting document was simple and short. While attorneys are encouraged, in accordance with Federal Rule of Civil Procedure 8, to keep their pleadings "short and plain," it would be unreasonable for attorneys of the skill and experience level at issue here to spend seven hours drafting the complaint in this case. (*See* Doc. 1.)

8

time each task took." *Flying J Inc. v. Comdata Network, Inc.*, 322 F. App'x 610, 617 (10th Cir. 2009) (citing *Robinson*, 160 F.3d at 1284). But "block billing" is not strictly prohibited. *See Phillips v. LuckyGunner, LLC*, No. 14-CV-02822-RPM, 2015 WL 3799574, at *4 (D. Colo. June 17, 2015). At most, this imprecise practice may be evidence that a claimed amount is excessive. But at least, it may obfuscate the correct result of a task like the present one.

Next, the Court turns to the hours billed by Ms. Maytin and Mr. Murphy. In violation of D.C.COLO.LCivR 54.3(b)(2), both Ms. Maytin's billing statement and Mr. Murphy's billing statement are rife with general, vague, or unintelligible descriptions such as "research 1983 actions," "emails," "phone conference," "phone discussion," "Review/Respond emails," "TC's F&T LM re:case (x3)," "Mtg. W/ VA & WTts," "LM melt down," "Additional research," and "TCT LM."  (ECF No. 172, Exs. 2–3). The record is replete with charges by Ms. Maytin and Mr. Murphy billing time for emails, telephone conferences, or correspondence with each other. There are also entries which movants do not contest relate only to the ongoing criminal trial or informing Ms. Arend about the progress of the same.[4] Certainly, it may be

---

[4] For example, Ms. Maytin has several entries like the one on 3/13/2012 (all before this case was filed) that clearly relate to the criminal matter: "spoke w/ VA – trial date set for May 7, 2012; e-mail DM and AR trial date." (Doc. 172-2, at 2–4.) In all, Defendants suggest that up to 2.9 hours of Ms. Maytin's requested fee time relates exclusively to the criminal case. The Court's review suggests approximately half of this time may have been related to this civil proceeding and the other half solely to the criminal case.

Mr. Murphy also billed for time that pre-dated the civil complaint, including for meetings with district attorneys and preparing for news interviews. (Doc. 172-5.) The Court is unpersuaded by movant's suggestion that press conferences related to the criminal case were billable in this civil matter because "[a]ny preparation

9

appropriate for both counsel to bill time for occasional strategy planning sessions, where both are bringing value to the discussion, but mere transmission of information between the attorneys does not translate to double value to the client or case. *See Clawson v. Mountain Coal Co.*, No. 01-cv-02199-MSK-MEH, 2007 WL 4225578 (D. Colo. Nov. 28, 2007) (stating that "meetings that are conducted simply to assign a task, or to ensure that a task is progressing as requested, do little to advance the substance of the litigation and should not give rise to a fee award"). Additionally, both Ms. Maytin and Mr. Murphy bill for numerous hours spent on trial preparation, drafting jury instructions and the verdict form, and attending the two-day trial on damages. In September and October 2018, Ms. Maytin has twelve separate billings entries referencing work done on the jury instructions while Mr. Murphy has six similar billing entries. The Court find that these entries are an unnecessary duplication of services, especially given the short duration of the trial and the relatively non-complex nature of the damages claim.

As to the unnecessary expenditure of attorney time on clerical and other tasks, Defendant accurately points out several occasions in which Ms. Maytin billed for tasks that seemingly should have been performed by clerical staff. For example, there are numerous billing entries for administrative tasks such as: printing and

---

for interviews (billed by Murphy) were necessary to ensure the criminal case would proceed." (Doc. 179 ¶ 10.) The 1.9 hours Mr. Murphy put into these news interviews and related preparation are non-compensable. The additional 2.5 hours Defendants claim are related only to the criminal case appear to have some bearing on the civil action for planning purposes, and the Court will reduce these hours accordingly.

10

emailing court documents and case pleadings; filing documents with the Court; faxing documents; reviewing email notices confirming that documents were properly filed; and coordinating conference calls. (*See* Doc. 172, Ex. 2.) Certainly, these tasks did not call upon Ms. Maytin's legal knowledge or expertise. Considering the *Ramos* factors, Ms. Maytin has not proven that time spent on these administrative or scheduling matters is normally billed to the client.

Given the Court's consideration of the evidence and governing law, the billing records reflect instances of billing for excessive time, duplicative services, and services not attributable to this civil matter. The Court does, however, recognize that some duplication was unavoidable given Ms. Ruttenberg's health-related departure from the case. So instead of serving as a "green-eyeshade accountant, scouring the individual billing entries for evidence of waste or fat," *Hayes*, No. 15-cv-02015-REB-NYW (D. Colo. July 2, 2018) (Doc. 220, at 6); *see Fox*, 563 U.S. at 838, the Court finds that a general reduction of 25% of the requested hours is appropriate. *See DeGrado*, 2009 WL 1973501, at *10; *Carr v. Fort Morgan School Dist.*, 4 F. Supp. 2d 998, 1003 (D. Colo. 1998) (determining that an across-the-board reduction of requested attorney fees is appropriate).

Finally, the Court turns to Defendant's objection to (primarily) Ms. Maytin's request for 24 hours of travel time at a reduced hourly rate of $120. The record reflects that Ms. Maytin billed for travel time to Denver from Aspen on three separate occasions. (Doc. 172, Ex. 2.) Mr. Murphy billed for 1.6 hours for "drive time to deposition" and to the "bill of costs hearing." (*Id.* at Ex. 5.) The pleadings indicate

11

that all of this travel was by car, suggesting that counsel was otherwise unproductive during this travel time. *In Achondo v. Anderson, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1105–06 (10th Cir. 2010), the Tenth Circuit explained that although attorney travel time may be compensable in a fee award, "a trial court has discretion to apply a reduced hourly rate if the time is otherwise unproductive." *Id.* at 1106. Here, given the reduced rate charged by counsel ($120 per hour), the Court believes it appropriate to award the hours claimed for such travel.

### 2. Reasonable Hourly Rate

The Tenth Circuit indicates that "the court must look to 'what the evidence shows the market commands for civil rights or analogous litigation.'" *Burch v. La Petite Academy, Inc.*, 10 F. App'x 753 (10th Cir. 2001) (quoting *Case*, 157 F.3d at 1243). The local market rate is usually the state or city in which counsel practices. *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1999) (looking at "the prevailing market rate in the relevant community"); *Case*, 157 F.3d at 1256 (looking at fees charged by lawyers in the area in which the litigation occurs). The court is also entitled to consider the quality of counsel's performance in setting the fee. *Ellis*, 163 F.3d at 1203.

Ms. Ruttenberg requests a rate of $250 per hour while Ms. Maytin and Mr. Murphy request a rate of $225 per hour. Counsel submitted declarations, resumes, an affidavit from Attorney Richard L. Ott, and several state court orders in support of their contention that the requested rates are below the billing standards for civil rights cases in this legal market. (*See* Docs. 172, 179). Further, the Court notes the

12

following decisions where the same or similar hourly rates were deemed reasonable in civil rights cases. *See White v. Chafin*, No. 13-cv-01761-CMA-MJW, 2016 WL 9735066, * 4 (D. Colo. Sept. 23, 2016) (approving rates of $500 per hour for lead counsel, $275–$450 per hour for co-counsel, and $150 per hour for paralegal); *Martinez v. Valdez*, 125 F. Supp. 3d 1190 (D. Colo. 2015) (approving rates of $300–$500 per hour for counsel and $150 per hour for paralegal); *Schlenker v. City of Arvada*, No. 09-cv-1189-WDM-KLM, 2010 WL 2843414, *2 (D. Colo. July 19, 2010) (approving rates of $400–$450 per hour for counsel and $110 per hour for paralegal); *Barnett v. Bd. of County Commissioners of Montrose*, No. 14-cv-01765-JAP-GPG, 2015 WL 13614118, *5 (D. Colo. Dec. 14, 2015) (approving rates of $400 per hour for lead counsel and $75 per hour for a paralegal after surveying recent District of Colorado cases that address contested hourly rates); *Carbajal v. Warner*, No. 10-cv-02862-PAB-KLM, 2016 U.S. Dist. LEXIS 24517 (D. Colo. Feb. 29, 2016) (awarding hourly rate of $215 for attorney in civil rights litigation) (overruled on grounds other than the hourly fee amount awarded); *Shrader v. Beann*, No. 10-cv-01881-REB-MJW, 2012 U.S. Dist. LEXIS 20575 (D. Colo. Feb. 17, 2012) (concluding that hourly rate of $425 is reasonable for senior attorneys and hourly rate of $75 is reasonable for legal assistant); *Profita v. Puckett*, No. 15-cv-01237-DME-CBS, 2017 U.S. Dist. LEXIS 63168, at *77 (D. Colo. Apr. 25, 2017) (approving attorney hourly rate of $275).

Upon a careful review of the parties' proffered evidence and the comparable cases from this District, the Court concludes that the requested hourly rates are

appropriate. The Court finds that $225–$250 per hour are reasonable rates in the Denver area for attorneys of similar background and experience as Plaintiff's counsel. After accounting for the reduction of hours detailed above, the lodestar calculation is as follows:

| **Attorney** | **Hourly Rate** | **Hours Billed After 25% Reduction** | **Total Fee** |
| --- | --- | --- | --- |
| Alison Ruttenberg | $250 | 127.5-25% (31.88)=95.62 | $23,905.00 |
| Lauren Maytin | $225 | 152.6-25% (38.15)=114.45 | $25,751.25 |
| Daniel Murphy | $225 | 78.3-25% (19.58)=58.72 | $13,212.00 |
| Lauren Maytin - Travel Time | $120 | 24 | $2,880.00 |
| Daniel Murphy - Travel Time plus Mileage | $120 | 1.6 | $192.00 + $16.66 mileage $208.66 |
| **Total** | | **276.48** | **$65,956.91** |

### III. CONCLUSION

Based on the foregoing, it is **ORDERED** that Plaintiff's Motion for Attorney Fees (Doc. 172) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff is awarded attorneys' fees in the reduced amount of **$65,956.91** as set forth in this Order. It is **FURTHER ORDERED** that the Final Judgment shall be amended to reflect the award of attorneys' fees.

Dated: July 1, 2019

BY THE COURT:

*s/Daniel D. Domenico*
Daniel D. Domenico
United States District Judge